**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**Beatrice M. Peters, Administatrix of the Estate of Sylvia Robinson**

**v.**

Case No. 12-cv-233-PB
Opinion No. 2012 DNH 150

**Applewood Care and Rehabilitation Center et al.**

**MEMORANDUM AND ORDER**

The estate of Sylvia Robinson (the "Estate") filed suit in New Hampshire Superior Court against Applewood Care and Rehabilitation Center ("Applewood"), a privately owned and operated nursing home, Gail Cushing, the administrator of the facility, as well as unknown physicians and nurses working for Applewood. The Estate seeks to hold defendants liable for Robinson's death and other injuries she sustained during her residency at Applewood. The complaint asserts four state law claims that sound in tort and a section 1983 claim for violations of the Federal Nursing Home Reform Amendments ("FNHRA") to the Medicaid law, 42 U.S.C. § 1396r. Based on federal question jurisdiction over the section 1983 claim, defendants removed the action to this court. Cushing has filed a motion to dismiss. For the reasons provided below, I dismiss

the section 1983 claim against all defendants and decline to exercise supplemental jurisdiction over the remaining state law claims.

## I. BACKGROUND

In 2004, Robinson became a resident of Applewood, a long-term healthcare facility located in Winchester, New Hampshire. As Applewood's administrator at all relevant times, Cushing was responsible for managing and operating the facility.

On April 6, 2010, at approximately 1:15 AM, Robinson fell out of her bed after the nursing staff failed to engage the bed rails. There was nothing on the floor to cushion her fall. Concerned about her injuries, Applewood's staff brought Robinson to Cheshire Medical Center ("Cheshire") for emergency evaluation at approximately 2:00 AM. After an assessment, Robinson was sent back to Applewood.

Robinson complained about severe pain and discomfort later that morning. At 12:15 PM, Applewood's staff brought Robinson back to Cheshire, where she was diagnosed with a left distal femur fracture as well as contusions on her left leg and foot, and both of her thighs.

Robinson subsequently suffered sepsis from a suspected urinary tract infection, renal insufficiency, and hypotension. She died on April 13, 2010, seven days after her fall. During her time at the facility, Robinson also suffered from pressure ulcers, malnourishment, and dehydration.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), plaintiff must make factual allegations sufficient to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim is facially plausible when it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citations omitted).

In deciding a motion to dismiss, I employ a two-pronged approach. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). First, I screen the complaint for statements that "merely offer legal conclusions couched as fact

or threadbare recitals of the elements of a cause of action." Id. (citations, internal quotation marks, and alterations omitted). A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed. Id. Second, I credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then determine if the claim is plausible. Id. The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . ." (citation omitted)).

## III. ANALYSIS

Cushing moves to dismiss all the claims to the extent they seek to hold her personally liable for Robinson's injuries. In

her initial brief, Cushing argued that I should dismiss the section 1983 claim because the FNHRA does not provide for a private right of action, devoting a meager three sentences to her argument. In her reply brief to the Estate's objection to the motion, Cushing argues for the first time that she cannot be held liable under section 1983 because she is not a state actor. The Estate has responded to the argument in its surreply brief. Because it is clear that the Estate has failed to allege sufficient facts to show that either Applewood or its agents acted under color of state law, I dismiss the section 1983 claim against all defendants.

To state a viable section 1983 claim, "a plaintiff must show both that the conduct complained of transpired under color of state law and that a deprivation of federally secured rights ensued." Santiago v. Puerto Rico, 655 F.3d 61, 68 (1st Cir. 2011). Where a plaintiff asserts a section 1983 claim against a private party, the plaintiff must establish that "the alleged infringement of federal rights [was] fairly attributable to the State[.]" Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982) (internal quotation marks omitted).

In the present case, the Estate alleges that a privately owned and operated nursing home and its agents acted under color of state law because the nursing home is "heavily funded by, and relies on, Medicaid and Medicare funds . . . [and] is necessarily and mandatorily regulated by the federal government under 42 U.S.C. § 1396r[.]" Compl. ¶ 32, Doc. No. 1-1. It is abundantly clear, however, that "government regulation, even extensive regulation, and the receipt of [government] funds, such as Medicare, Medicaid and Hill-Burton funds, are insufficient to establish that a hospital or other entity acted under color of state law." Rockwell v. Cape Cod Hosp., 26 F.3d 254, 258 (1st Cir. 1994).

In fact, no lesser authority than the Supreme Court has rejected the argument that a privately owned and operated nursing home could be treated as a state actor solely because it is extensively regulated and substantially subsidized by the government.[1] Blum v. Yaretsky, 457 U.S. 991, 1004, 1011 (1982).

---

[1] Although the specific issue in Blum was whether private nursing homes could be held liable under the due process clause of the Fourteenth Amendment, the Supreme Court has held that "[i]n a § 1983 action . . . the statutory requirement of action 'under color of state law' and the 'state action' requirement of the Fourteenth Amendment are identical." Lugar v. Edmondson Oil Co., 457 U.S. 922, 929 (1982).

In Blum, the Court held that "although it is apparent that nursing homes in [the state] are extensively regulated, the mere fact that a business is subject to state regulation does not by itself convert its action into that of the State[.]" Id. at 1004 (internal quotation marks and alterations omitted). And although the state in that case subsidized the operating costs of the nursing homes and paid the medical expenses of more than 90% of the patients, the Court, in no uncertain terms, also rejected the argument that extensive state funding converted a private nursing home into a state actor:

> That programs undertaken by the State result in substantial funding of the activities of a private entity is no more persuasive than the fact of regulation of such an entity in demonstrating that the State is responsible for decisions made by the entity in the course of its business.

Id. at 1011.

Despite the fact that Cushing cited to Blum in her reply brief, the Estate's surreply brief does not address the case. Instead, the Estate cites to inapposite circuit court cases for the proposition that state funding and pervasive regulation are sufficient to convert private action into state action. See Rosborough v. Mgmt. & Training Corp., 350 F.3d 459, 461 (5th Cir. 2003) (holding that a privately operated prison is a state

actor because it performs a public function traditionally reserved for the state); Horvath v. Westport Library Ass'n., 362 F.3d 147, 152-53 (2nd Cir. 2004) (concluding that a library is not a state actor by virtue of public funding alone, but rather because it was created by a legislative act to further governmental objectives, and because the state retained permanent authority to appoint half of the library's governing board).

The alleged grounds of state action in the instant case are indistinguishable from the grounds the Supreme Court rejected in Blum. Accordingly, I dismiss the Estate's section 1983 claim against all defendants.[2] Having disposed of the only federal claim at this early stage of the case, I decline to exercise supplemental jurisdiction over the Estate's state law claims. See 28 U.S.C. § 1367(c)(3); Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998).

---

[2] In light of my disposition of the case, I deny as moot defendants' motion for a hearing (Doc. No. 15) on the motion to dismiss.

## IV. CONCLUSION

For the aforementioned reasons, I grant the motion to dismiss the section 1983 claim against all defendants (Doc. No. 3). Pursuant to 28 U.S.C. § 1367(c), I remand the Estate's supplemental state law claims to Cheshire County Superior Court. The clerk shall enter judgment dismissing the federal claim and remand the remaining claims to state court.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

August 30, 2012

cc: Robert A. Skaines, Esq.
Daniel C. Federico, Esq.
Jacob John Brian Mavelley, Esq.
Edwinna C. Vanderzanden, Esq.